IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BROUSSARD, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | SA-21-CV-01238-OLG |
| FINWISE BANK, INC, A STATE OF | § | |
| UTAH CORPORATION; MULLIGAN | § | |
| FUNDING, LLC, A DELAWARE | § | |
| LIMITED LIABILITY COMPANY; | § | |
| MULLIGAN SENIOR, LLC, A | § | |
| DELAWARE LIMITED LIABILITY | § | |
| COMPANY; INNOVATIVE FUNDING | § | |
| SOLUTIONS, LLC, A DELAWARE | § | |
| LIMITED LIABILITY COMPANY; | § | |
| MARK LEIBOWITZ, DAVID | § | |
| LEIBOWITZ, ZACHARY STOLL, | § | |
| | § | |
| *Defendants.* | § | |

## **ORDER**

Before the Court in the above-styled and numbered cause of action is the Motion to Compel

Arbitration and Stay Action [#10] filed by Defendants FinWise Bank, Mulligan Funding, LLC,

Mark Leibowitz, and David Leibowitz (together, "Defendants").[1]  All pretrial matters in this case

have been referred to the undersigned for disposition pursuant to Rule CV-72 and Appendix C of

the Local Rules of the United States District Court for the Western District of Texas [#7].  The

undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(b)(1)(A).[2]  In issuing

---

[1] There are two other named defendants, Innovative Funding Solutions, LLC, and Zachary Stoll. They did not join in this motion and the docket does not reflect that either has been served.

[2] The Fifth Circuit has not specifically decided whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1).  *See Lee v. Plantation of La., L.L.C.*, 454 Fed. App'x 358, 360 n.3 (5th Cir. 2011) ("Because we conclude jurisdiction is lacking, we need not reach the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of the standard of review by the district judge of the magistrate judge's order.").  But the Circuit Courts that have addressed the question have concluded that motions to

this Order, the undersigned has also considered Plaintiff's Response to the Motion to Compel Arbitration [#11] and Defendants' Reply [#12].  For the reasons set forth below, the Motion to Compel Arbitration and Stay Action is **GRANTED**.

## I.  Background

This case arises from two loan agreements Plaintiff entered into with all named defendants. In January 2021, Plaintiff, a small business owner, obtained a commercial loan from Defendants in the amount of $100,000.  (Compl. [#1], at 5.)  Six months later Plaintiff obtained a second loan from Defendants in the amount of $55,000, which also consolidated the remaining balance of the original loan.  (*Id.*)  Included with his complaint, Plaintiff filed a copy of both Business Loan and Security Agreements (the "Loan Agreements").  (Compl. [#1] Ex. 1, at 30–40, & Ex. 2 at 50–60.)

Plaintiff's Complaint alleges claims of fraud, usury, unconscionability, and unjust enrichment against all defendants, and a claim of negligence per se violation of Texas Finance Code against all defendants except FinWise.  Each of these claims arises from the interest rate charged on the loans, which Plaintiff alleges exceeds the maximum permissible rate in Texas. (Compl. [#1] at 1.)  Plaintiff seeks to invalidate the Loan Agreements and obtain the return of

---

compel arbitration are not dispositive, so long as they do not result in dismissal of any claims and instead stay the litigation during the arbitral process.  *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 Fed. App'x 131, 133–34 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein.  Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation.");  *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (holding that a motion to compel arbitration is not dispositive because a district court retains authority to dissolve stay or review arbitration award).  Most district courts in the Fifth Circuit agree.  *See, e.g.*, *Adams v. Energy Transfer Partners*, No. 2:16-CV-400, 2017 WL 2347425, at *1 (S.D. Tex. May 30, 2017) (concluding that motion to compel is properly classified as a non-dispositive matter); *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *1–3 (N.D. Tex. Dec. 21, 2015) (holding that the magistrate judge's ruling compelling arbitration was non-dispositive where the ruling stayed the case rather than dismissed the case pending arbitration).

payments previously paid to Defendants.  (*Id.* at 2.)  Defendants subsequently filed a motion to compel arbitration, arguing that the arbitration provision contained in the Loan Agreements requires Plaintiff to arbitrate his claims.  (The two agreements contain identical arbitration provisions, found in Section 33 of each agreement.)  The motion is now ripe for the Court's review.

## II.  Legal Standard

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim.  "The first is contract formation—whether the parties entered into *any arbitration agreement at all*.  The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original).  In the absence of a valid clause delegating the threshold issue of arbitrability to the arbitrator, both steps are questions for the Court.  *Id.*  However, where the parties' contract delegates the question of arbitrability to the arbitrator, a court possesses no authority to decide whether the parties' dispute falls within the scope of the agreement.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ---U.S.---, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *TRC Envtl. Corp. v. LVI Facility Servs., Inc.*, 612 Fed. App'x 759, 762 (5th Cir. 2015).  Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate.  *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).  Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable.  *Carter v. Countrywide Credit Indus., Inc.*, 362

3

F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The arbitration provision at issue in this case expressly references the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and the agreement evidences a transaction involving interstate commerce.  (Compl. [#1] Ex. 1, at 36–37, & Ex. 2, at 56–57.)  Accordingly, the FAA applies here. *See* 9 U.S.C. § 2 (FAA applies to written arbitration agreements in contracts "evidencing a transaction involving commerce").  "Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (quoting 9 U.S.C. § 2).  "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting Section 2).  Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."  *Casarotto*, 517 U.S. at 687.

### III.  Analysis

Defendants' motion to compel arbitration should be granted.  First, a valid arbitration agreement exists between Plaintiff and Defendants.  Also, the arbitration agreement contains a provision delegating issues of arbitrability to the arbitrator.  Finally, the question of whether the Texas Finance Code applies to Plaintiff's claims is a question for the arbitrator and not grounds for invalidating or refusing to enforce the arbitration agreement.

**A.    There is a Valid Agreement to Arbitrate.**

At step one of the analysis the Court must determine whether the parties entered an agreement to arbitrate. *See Kubala*, 830 F.3d at 201. Plaintiff does not dispute that he signed the Loan Agreements. Although the Loan Agreements are between Plaintiff and FinWise Bank as lender, the uncontested record before the Court establishes that Mulligan LLC is the service provider for FinWise, and Mark and David Leibowitz are principals of Mulligan. (Compl. [#1] Ex. 1, at 25, & Ex. 2, at 45; Compl. [#1] at 3–4; Motion [#10] at 2.) And Section 1 of each of the Loan Agreements clarifies the agreement is between Plaintiff and FinWise Bank, which includes "its successors, assigns, agents, and servicers." (Compl. [#1] Ex. 1, at 30, & Ex. 2, at 50.)

The evidence before the Court further establishes that Plaintiff signed the first agreement on January 28, 2021, and the second on June 25, 2021. (Compl. [#1] Ex. 1, at 40, & Ex. 2, at 60.) Both loan agreements contain the same arbitration provision, which states in relevant part:

> SECTION 33. ARBITRATION/CLASS ACTION WAIVER. To the extent that a claim or dispute arises out of, or in relation to this Agreement, including without limitation, the terms, construction, interpretation, performance, termination, breach, or enforceability of this Agreement, the parties hereby agree that the claim or dispute shall be, at the election of either party, resolved by mandatory binding arbitration in Utah within a reasonable time period not to exceed ninety (90) days. . . . This arbitration section is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

(*Id.* at 36–37, & 56–37.) Defendants invoke this provision in asking the Court to compel Plaintiff to arbitrate his claims. Plaintiff responds that the arbitration provision is invalid because the contract as a whole is void.

Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types: challenges to the contract as a whole and challenges directed specifically at the arbitration provision. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). Federal courts may decide a challenge directed specifically at the arbitration provision, but challenges to the contract as a whole

are decided by the arbitrator.  *Id.* at 445–46*; see also Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002) (collecting cases).

In *Buckeye*, the plaintiffs argued that because the defendants had charged an allegedly usurious interest rate the entire contract was void—including the arbitration provision.  *Id.* at 443. The Supreme Court held that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.  . . . [and], unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Id.* at 445–46.

Here, Plaintiff's challenges to the validity of the arbitration provision mirror that of the plaintiffs in *Buckeye*; Plaintiff contends that the allegedly usurious interest rate of the loan renders the entire contract void as a matter of public policy.  As in *Buckeye* those challenges are to be decided by the arbitrator and not the Court.  *See Id.*  While Plaintiff's Response also ostensibly challenges the arbitration provision itself as unconscionable, his arguments in support of that challenge are all directed at the Loan Agreements as a whole rather than their arbitration provision. (Resp. [#11] at 6–7.)  Because Plaintiff's unconscionability challenge to the arbitration provision is in fact a challenge to the entire agreement with Defendants, it is a question for the arbitrator. *See Primerica*, 304 F.39 at 472 (holding that when a defense to arbitration is in fact part of the underlying dispute it must be submitted to the arbitrator).  In summary, Plaintiff has not raised any argument challenging the validity of the arbitration provision itself.

**B.     The threshold question of arbitrability is delegated to the arbitrator.**

The second step of the analysis is to determine whether Plaintiff's claims are arbitrable, meaning whether they fall within the scope of the arbitration provision.  *See Kubala*, 830 F.3d at 201.  The arbitration clause at issue here provides that "a claim or dispute aris[ing] out of, or in

relation to this agreement . . . shall be . . . resolved by mandatory binding arbitration." (Compl. [#1], Ex. 1, at 36, & Ex. 2, at 56.)  Here, all of Plaintiff's claims stem from the interest rate charged under the Loan Agreements.  Defendants assert that the claims therefore fall within the scope of the arbitration provision.  Plaintiff does not contest this assertion.

The Court need not reach the second step in the analysis though because the parties' contract delegates the question of arbitrability to the arbitrator.  *See Schein,* 139 S. Ct. at 529.  The arbitration clause provides that "the arbitration shall be conducted in accordance with the Expedited Procedures of the JAMS Comprehensive Arbitration Rules and Procedures." (Compl. [#1], Ex. 1, at 36, & Ex. 2, at 56.)  These Rules contain a section on the arbitrator's jurisdiction, stating that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues."  JAMS Compr. Arb. R. R-11(b).  The Fifth Circuit recently reaffirmed its holding that the incorporation of these rules "clearly and unmistakably express[es] the parties' intent to leave the question of arbitrability to an arbitrator." *See Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714 (5th Cir. 2017).  Accordingly, bound by this precedent, the Court concludes that the arbitrator—and not this Court—has the authority to decide any preliminary questions regarding the arbitrability of Plaintiff's claims.

## C.    Any conflict-of-law question should be decided by the arbitrator.

Plaintiff also invokes choice-of-law principles to argue that the forum and choice-of-law provisions in the arbitration provision create a conflict of law such that the arbitration provision is unenforceable.  (Resp. [#11], at 7.)  The arbitration provision provides that "the parties hereby agree that the claim or dispute shall be, at the election of either party, resolved by mandatory

binding arbitration in Utah . . . and [the arbitrator] shall base the award on applicable Utah law."
(Compl. [#1], Ex. 1, at 36, & Ex. 2, at 56.)  Plaintiff contends that Utah and Texas law on interest
rates is in conflict and that he therefore cannot be required to arbitrate his claims in a forum that
may apply Utah law.  This concern is not properly before this Court at this stage.  The question
before the Court is whether to enforce the arbitration provision, not which law to apply in resolving
the merits and damages issues in the dispute.

The parties have entered into a valid arbitration agreement that governs the claims at issue
in this case.  As part of that agreement, they have contracted that Utah law is applicable, although
it will be for the arbitrator to determine whether choice-of-law principles require the application
of Texas rather than Utah law.  Plaintiff's concerns about choice-of-law are not properly before
this Court as the issue "must be decided in the first instance by the arbitrator."  *Vimar Seguros Y
Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995).

As for the appropriate forum, the arbitration provision also expressly invokes the FAA,
which gives the parties to the arbitration agreement the right to seek an order compelling arbitration
"in the manner provided for in such agreement."  9 U. S. C. § 4.  The Supreme Court has held that
the FAA's reference to "the manner provided for" includes forum and choice-of-law provisions,
and that courts are obligated to enforce those terms.  *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468,
478–79 (1989).  Thus, the parties should arbitrate their claims in Utah and raise any arguments
about the forum and the applicable law to the arbitrator.

**IT IS THEREFORE ORDERED** that the Motion to Compel Arbitration and Stay Action
[#10] filed by Defendants FinWise Bank, Mulligan Funding, LLC, Mark Leibowitz; and David
Leibowitz is **GRANTED**.

8

**IT IS FURTHER ORDERED** that the claims of Plaintiff against Defendants FinWise Bank, Mulligan Funding, LLC, Mark Leibowitz, and David Leibowitz are **COMPELLED TO ARBITRATION** in accordance with the arbitration provision contained in Section 33 of the Business Loan and Security Agreements.

**IT IS FURTHER ORDERED** Plaintiff's claims against Defendants FinWise Bank, Mulligan Funding, LLC, Mark Leibowitz, and David Leibowitz, are **STAYED** pending the completion of arbitration proceedings.

**IT IS FINALLY ORDERED** that Plaintiff and Defendants FinWise Bank, Mulligan Funding, LLC, Mark Leibowitz, and David Leibowitz must **FILE QUARTERLY STATUS REPORTS** on the progress of the arbitration, with the first advisory due on **August 1, 2022**.

**IT IS SO ORDERED**.

SIGNED this 12th day of May, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE